(72 App. Div. 630.)

### CLARKE v. CALVERT et al.

(Supreme Court, Appellate Division, Second Department. ˙May 29, 1902.)

1. MORTGAGES—PRIORITIES—EMPLOYMENT OF LOAN IN IMPROVEMENTS.

One who makes a loan on property which he supposes to be unincumbered cannot, when he finds a prior mortgage, successfully demand to be preferred to it, merely because the money loaned by him has been used by the borrower in improving the property.

2. MARSHALING SECURITIES—PREFERENCE FOR PART OF CLAIM—DUTY OF PREFERRED CREDITOR.

A creditor whose debt is secured by mortgage on nine lots, and but partially represents a claim as to which he is entitled to preference over the mortgagee of a single lot, is bound in equity to make the preferred portion of his debt out of the remaining eight lots, so as to relieve the one lot for the latter mortgagee's benefit; and, where the sum realized from the sale of the eight lots is in excess of the preferred portion of the creditor's debt, it will be deemed to have satisfied that portion.

Appeal from special term.

Action by Audley Clarke, as surviving partner of the firm of Christian & Clarke, against E. S. Calvert and others. From a judgment for plaintiff, defendant Calvert appeals. Affirmed.

The following is the opinion of the special term, on which affirmance was had (MAREAN, J.):

The plaintiff's promise to allow Fowler, when the houses were finished, to place a first mortgage of $3,000 on lot No. 1 (the lot now covered by defendant Calvert's $2,500 mortgage), and to himself take a $1,000 second mortgage thereon, provided the balance due plaintiff should be paid in cash, was a promise to Fowler for Fowler's own convenience, and not for the benefit of defendant Calvert, or any other mortgagee; and defendant Calvert has no standing to enforce it, or claim the benefit of it in any manner. Besides, the balance, $600, has not been paid in cash, nor tendered. Any right which defendant Calvert may have to be preferred over the plaintiff grows out of his release of lots 1 to 9 without actual knowledge that plaintiff's mortgage covered lot No. 1. At that time there was due Calvert on his blanket mortgage covering the whole thirteen lots $31,200, which, distributed equally over the thirteen lots, amounted to $2,400 per lot. In releasing lots 1 to 9 Calvert acknowledged payment of nine-thirteenths of the mortgage debt, thus leaving four-thirteenths on the lots not released. Calvert knew of plaintiff's mortgage, but thought it covered only lots 10, 11, 12, and 13. Each of the thirteen houses was then of the same value, and, as each of the first nine was then sold to McMahon at $2,250 ($20.250), it is pretty clear that there was no equity above $2,400 each in the last four. The fact that plaintiff's mortgage covered those four lots was probably the reason they were not included in the sale to McMahon. Calvert scaled his claim on the first nine lots down to $20,250 ($2,250 per lot), and forgave the balance. He thereupon took mortgages on each of the lots 1 to 9 for $2,850 to secure the said amount of $20,250 and $5,400 in addition, which he agreed to loan McMahon, and which, I assume, he did thereafter advance. McMahon finished the houses on the lots conveyed to him. Surely, defendant Calvert has no equity to be preferred to the plaintiff, except as to the sum of $20,250. One who simply makes a loan on property which he supposes to be unincumbered cannot, when he finds a prior mortgage, successfully demand to be preferred to it, even though the money has been used by the borrower in improving the property. Calvert afterward took title to lots 2 to 9 in satisfaction of $22,800, the amount of his eight mortgages thereon. He was bound in equity to get the whole of the $20,250, as to which he had a right

to be preferred over the plaintiff, out of those eight lots, if he could, in order to relieve lot 1 for the plaintiff's benefit; and the $22,800 which he did get out of them (he actually got $24,000, for he testified that they were worth $3,000 apiece) must be deemed to include the $20,250. Thus the whole debt as to which he was ever entitled to be preferred over plaintiff has been extinguished. It is pretty plain that he did not take title to No. 1, but continued to hold his mortgage for $2,850 thereon, in order to be in a position, as he thought, to claim the preference which he seeks to enforce. This mortgage defendant Calvert scaled down to $2,500. It represents altogether moneys loaned to McMahon, which were never a lien prior to plaintiff's mortgage. More than this, it is not by any means clear that Calvert's ignorance, which was the result of inexcusable negligence, for plaintiff's mortgage was recorded, would entitle him to relief, even if his present mortgage did equitably, as between him and plaintiff, represent a part of the old mortgage debt, which was formerly a prior lien.

Judgment for plaintiff.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

John F. Nelson, for appellant.
William T. Connell, for respondent.

PER CURIAM. Judgment affirmed on the opinion of MAREAN, J., at special term, with costs.

(75 App. Div. 235.)

## BLISS v. UNITED TRACTION CO.

(Supreme Court, Appellate Division, Third Department. September 3, 1902.)

1. OPINION EVIDENCE.

A motorman, not shown to be an expert, and who has had but a momentary experience with a reverse current, under different and special conditions, is not competent to testify that a car going 10 miles an hour ought to be stopped immediately by use of the reverse power.

2. HARMLESS ERROR.

It being admitted that a motorman saw a boy start to run in front of his car when he was eight feet away, and the motorman's ability in the exercise of reasonable care to stop the car in time to prevent the accident being left to the jury, the admission of the opinion of one not qualified to give it, that a car, under the given conditions, could, by the use of the reverse current, be stopped instantly, may have been prejudicial.

Appeal from trial term, Rensselaer county.

Action by Emma Bliss, administratrix of Franklin Bliss, deceased, against the Union Traction Company. From a judgment for plaintiff on a verdict, and from an order denying a motion to set aside the verdict and for a new trial, made on the minutes, defendant appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, SMITH, and CHASE, JJ.

Patrick C. Dugan, for appellant.
Edmund J. Sweeney (John T. Norton, of counsel), for respondent.

CHASE, J. Franklin Bliss, a child five years and eight months old, was run upon by one of the defendant's trolley cars, and received in-